(859 P.2d 410)

No. 68,990

FARM BUREAU MUTUAL INSURANCE COMPANY, INC., *Appellant*, v. ROBERT LAUDICK, DONALD E. POWERS, PAULA JEAN POWERS, HENRY J. CALNAN, ARDIS B. CALNAN, MILTON A. ROSE, JOYCE A. ROSE, JAMES N. SWAFFORD, and WILMA L. SWAFFORD, *Appellees*.

Opinion filed September 17, 1993.

*Paul Hasty, Jr.,* and *Timothy J. Mudd,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellant.

*Nicholas S. Daily* and *Randall K. Rathbun,* of Depew, Gillen & Rathbun, of Wichita, for appellees.

*Karen R. Glickstein,* of Shughart, Thomson & Kilroy, of Kansas City, Missouri, and *Thomas W. Brunner, Daniel E. Troy,* and *Nancy J. Lemay,* of Wiley, Rein & Fielding, of Washington, D.C., for *amicus curiae* Insurance Environmental Litigation Association.

*Thomas E. Rice, Jr.,* of Baker, Sterchi & Cowden, of Overland Park, and *Victor C. Harwood, III, Edward Zampino,* and *Bernadette M. Peslak,* of

Harwood Lloyd, of Hackensack, New Jersey, for *amicus curiae* Aetna Casualty and Surety Company.

*Timothy J. Finnerty* and *Susan G. Saidian,* of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for *amicus curiae* Kansas Association of Defense Counsel.

Before ELLIOTT, P.J., GERNON and GREEN, JJ.

GERNON, J.: Farm Bureau Mutual Insurance Company (Farm Bureau) appeals from a trial court ruling which found it liable for coverage to its insured, Robert Laudick.

The only issue on appeal is whether the damage here, the leakage of gasoline from underground storage tanks, was excluded under the language of Farm Bureau's policy with Laudick.

The facts are undisputed. Landowners Powers, Calnans, Roses, and Swaffords (Landowners) contend their real estate was damaged from petroleum products leaking from a gas station owned by Laudick. The Powers' property, approximately 500 to 600 feet away, was the closest to Laudick's station. It is undisputed that the leakage occurred over a long period of time.

Prior to the trial on the Landowners' claim against Laudick, Farm Bureau filed a declaratory judgment action, asking the court to determine whether its policy with Laudick covered the claims of the Landowners against Laudick.

The Landowners filed a counterclaim against Farm Bureau, arguing that Farm Bureau was wrongfully denying coverage based on the pollution exclusion clause and, further, that its refusal to settle the claims within policy limits was negligent and in bad faith.

The Landowners obtained a judgment against Laudick. Farm Bureau at some point dismissed its declaratory judgment action, leaving only the Landowners' counterclaim for resolution. It is from an adverse ruling on this issue that Farm Bureau appeals.

The exclusion clause in question reads:

"This insurance does not apply . . . to bodily injury or property damage arising out of discharge, dispersal, release or escape of smoke, vapors, suet, fumes, acids, alkalies, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*" (Emphasis added.)

The parties have stipulated that the leakage was accidental. Therefore, the only question left to conclude is whether the leak was "sudden" under the terms of the policy. The interpretation of this clause is one of first impression for Kansas courts.

Our standard of review is well settled.

"The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court." *Godfrey v. Chandley,* 248 Kan. 975, 977, 811 P.2d 1248 (1991). See *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.,* 243 Kan. 130, 133, 754 P.2d 803 (1988). "Whether an instrument is ambiguous is a matter of law to be decided by the court." *Godfrey,* 248 Kan. at 977. This court's review of questions of law is unlimited. *Gillespie v. Seymour,* 250 Kan. 123, 129, 823 P.2d 782 (1991).

An appellate court may review the terms of an insurance policy only if such terms are open to different interpretations. *Lightner v. Centennial Life Ins. Co.,* 242 Kan. 29, 35, 744 P.2d 840 (1987).

An appellate court should not strain to create an ambiguity where, in common sense, there is none. *Bell v. Patrons Mut. Ins. Ass'n,* 15 Kan. App. 2d 791, 794, 816 P.2d 407, *rev. denied* 249 Kan. 775 (1991).

The policy language must be given its plain, ordinary meaning. *Central Security Mut. Ins. Co. v. DePinto,* 235 Kan. 331, 333, 681 P.2d 15 (1984). "Policies must be construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense." *Bramlett v. State Farm Mutual Ins. Co.,* 205 Kan. 128, 130, 468 P.2d 157 (1970). "A contract of insurance should not be construed through the magnifying eye of the technical lawyer but rather from the standpoint of what an ordinary man would believe it to mean." *Wheeler v. Employer's Mutual Casualty Co.,* 211 Kan. 100, 104-05, 505 P.2d 768 (1973).

Framed another way, this court is asked to conclude whether the word "sudden" as used here has a temporal meaning. Does it mean happening unexpectedly, without notice or warning, or unforeseen, or abrupt, rapid, or swift? See Webster's Third New International Dictionary 2284 (1986); Black's Law Dictionary 1432 (6th ed. 1990).

There are scores of cases found in many jurisdictions which hold differently from one another as to whether the term "sudden and accidental" is ambiguous and whether the word "sudden" should be given a temporal meaning. See *Northern Ins. Co. v. Aardvark Associates*, 942 F.2d 189 (3d Cir. 1991); *State of N.Y. v. AMRO Realty Corp.*, 936 F.2d 1420 (2d Cir. 1991); *Pepper's Steel & Alloys v. U.S. Fidelity & Guar.*, 668 F. Supp. 1541 (S.D. Fla. 1987); *American Motorists Ins. Co. v. General Host Corp.*, 667 F. Supp. 1423 (D. Kan. 1987), *aff'd* 946 F.2d 1482, *modified on other grounds* 946 F.2d 1489 (10th Cir. 1991); *Payne v. United States Fidelity & Guar. Co.*, 625 F. Supp. 1189 (S.D. Fla. 1985).

We conclude, after a reading of the record and available case law, that the term "sudden and accidental" should be given a temporal meaning, that it is unambiguous, and that the meaning of the word "sudden" combines both the elements of without notice or warning and quick or brief in time. See *C.L. Hauthaway & Sons v. American Motorists Ins.*, 712 F. Supp. 265, 268 (D. Mass. 1989).

Two recent Kansas cases in the federal court system support our conclusion.

In *American Motorists Ins. Co. v. General Host Corp.*, 667 F. Supp. 1423, the court was faced with the question of whether damages arising from salt pollution of an aquifer due to the careless operation of a salt plant were covered under the "sudden and accidental" exception to the pollution exclusion clause of a comprehensive liability policy. Noting that the pollution exclusion clause had been almost " 'construed . . . to the point of extinction,' " the court refused to ignore the plain meaning of the phrases "sudden" and "accidental." 667 F. Supp. at 1428.

"Even if 'sudden' is not limited to an instantaneous happening, it still must be on brief notice, and must be unexpected. No use of the word 'sudden' or 'suddenly' could be consistent with an event which happened gradually or over an extended time, nor could it be consistent with an event which was anticipated or predictable. Defendants here have argued that the damage caused by the salt pollution was 'accidental' because, from their standpoint, it was something they did not anticipate or expect. Even if the Court were to accept this argument, defendants have not explained how the 50 to 75 years course of salt pollution can be characterized to fit under the objective definition of 'sudden.' The policy language clearly requires both.

"The Court has carefully considered these and similar cases, yet cannot conclude that the pollution exclusion clause is ambiguous. The language is clear and plain, something only a lawyer's ingenuity could make ambiguous. 'It strains logic to perceive ambiguity' in this clause. *Waste Management of Carolinas, Inc. v. Peerless Insurance Co.*, 315 N.C. 688, 340 S.E.2d 374 (1986). The contract clearly and simply provides coverage for occurrences (which include continuous or repeated exposures to conditions) *except* for damages arising out of the discharge, dispersal, release or escape of pollutants. It is not a novel idea that exceptions to a broad blanket of coverage can be made. The fact that the pollution exception contains an exception itself which serves to reinclude some events that would have been included under the occurrence clause but for the pollution exclusion clause, does not change that. The contract is clear: 'occurrences,' as defined, are covered *unless* the occurrences arise out of pollution events; those are not covered *unless* such pollution events are sudden and accidental. Read as a whole, the policy covers 'continued and repeated exposures' except for exposures to pollution; then it covers only 'sudden and accidental' events. The Court declines to contort the plain language of the policy." 667 F. Supp. at 1428-29.

In *U.S. Fidelity & Guar. v. Morrison Grain Co.*, 734 F. Supp. 437 (D. Kan. 1990), *aff'd* 999 F.2d 489 (10th Cir. 1993), the court held that, under Kansas law, the abandonment of pesticides and fertilizers in deteriorating buildings and the burying of similar chemicals in metal drums underground fell within the pollution exclusion but that these acts could not be considered "sudden." Regarding the question of ambiguity, the court noted that early court decisions construing the exclusion "discerned an internal ambiguity in the policy between the possible meaning of 'sudden,' which had been argued by insurers to be an instantaneous discharge of pollutants, and the broad definition of 'occurrence,' which is found in the policy to include a continuous exposure to conditions." 734 F. Supp. at 445. "The absence of any policy definition for 'sudden and accidental' has been another reason for finding the phrase susceptible to more than one reasonable meaning." 734 F. Supp. at 445-46.

The court continued by stating that, more recently, courts have found no ambiguity in the pollution exclusion clause and have given the phrase its plain and simple meaning. In deciding "to fall in step with this current line of decisions," the court restated the rationale applied in *American Motorists* and determined that, "[a]s commonly used, the meaning of 'sudden' combines both the

elements of without notice or warning and quick or brief in time." 734 F. Supp. at 446.

"To divorce 'sudden' of its temporal component would eviscerate it of any independent meaning or force. 'If "sudden" refers only to the individual's subjective state of mind or capacity for forethought, it adds nothing to what the term "accidental" has already delivered. . . .' [Citation omitted.] Nor can this court accept the proposition that the phrase, 'sudden and accidental,' should be construed as an entity having but the one meaning of unexpected. Depriving 'sudden'·of its distinct temporal meaning and rendering it mere surplusage because of its use in conjunction with 'accidental' directly contradicts Kansas law which requires a contract to be read as a whole and meaning to be given to all of its terms. If the discharge of pollutants is brief or short, unexpected or unanticipated, not gradual or sustained, and not intended or expected, then the 'sudden and accidental' exception applies." 734 F. Supp. at 446-47.

Appellees cite the recent decision in *Morton Intern. v. General Acc. Ins.*, 134 N.J. 1, 629 A.2d 831 (1993). The court there declined to enforce the standard pollution exclusion clause as written, finding it would contravene the state's public policy. The court there contended the insurance industry's representation of the clause to that state's regulatory insurance agency, and by suggestion every other state's, was "grossly misleading." 134 N.J. at 29. While making that finding, the court also stated:

"[W]e are persuaded that 'sudden' possesses a temporal element, generally connoting an event that begins abruptly or without prior notice or warning, but the duration of the event—whether it lasts an instant, a week, or a month—is not necessarily relevant to whether the inception of the event is sudden. The meaning of the term 'accidental' being generally understood, we discern that the phrase 'sudden and accidental' in the standard pollution-exclusion clause describes only those discharges, dispersals, releases, and escapes of pollutants that occur abruptly or unexpectedly and are unintended." 134 N.J. at 29.

We note that, in the case before us, no such public policy issues have been raised and that there is no suggestion of any deception.

We hold that the clause language is clear, plain, and unambiguous and that the trial court erred when it found to the contrary.

Reversed.