(888 P.2d 869)
No. 71,160

CRESCENT OIL COMPANY, INC., *Appellant,* v. FEDERATED
MUTUAL INSURANCE COMPANY, *Appellee.*

Opinion filed January 27, 1995.

*Jon R. Viets*, of Independence, for appellant.

*Charles E. Spevacek* and *Thomas H. Crouch*, of Meagher & Geer, of Minneapolis, Minnesota, and *Timothy J. Finnerty* and *M. Kathryn Webb*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellee.

*Karen R. Glickstein*, of Shughart Thomson & Kilroy, of Kansas City, Missouri, and *Laura A. Foggan, John E. Barry*, and *John C. Yang*, of Wiley, Rein & Fielding, of Washington, D.C., for *amicus curiae* Insurance Environmental Litigation Association.

Before ROYSE, P.J., LARSON, J., and JOHN J. BUKATY, JR., District Judge, assigned.

LARSON, J.: Crescent Oil Company (Crescent), a gasoline retailer, appeals a trial court order that pollution exclusions contained in commercial general liability and umbrella insurance policies issued by Federated Mutual Insurance Company (Federated) properly excluded coverage for property damage caused by gasoline leaking from a Crescent storage tank.

The Washburn & Sons Amoco gas station and convenience store in Chanute, Kansas, is owned by Crescent and leased to Robert Washburn. Gasoline from the underground storage tanks located on the property leaked into the basement of a building on the adjoining property. Crescent and Washburn have been named defendants in the civil case seeking damages. That lawsuit seeks recovery under theories of negligence, strict liability, and negligence per se. Testing revealed that gasoline leaked from one of the lines running from the underground storage tanks.

During the time of the leak, Federated provided a Commercial General Liability policy to Crescent, which included a products-

completed operations hazard endorsement and an absolute pollution exclusion. Federated also provides Crescent with umbrella liability coverage on substantially the same terms. Federated refused to defend Crescent on the damage claim based on the absolute pollution exclusion. Crescent brought this declaratory judgment action to determine Federated's duties with respect to the claim. In granting summary judgment to Federated, the trial court held coverage did not exist because of the pollution exclusion.

Crescent appeals, contending Federated is bound by its policies to provide coverage for property damage to third parties caused by Crescent's petroleum product leaking from its storage tanks.

Resolving this appeal requires our interpretation of the coverage and exclusion provisions of Federated's Commercial General Liability insurance policy. "Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect." *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 240, 865 P.2d 182 (1993).

Crescent argues that under the policy, leaking gasoline is not a pollutant, the insurance contract provides coverage for the alleged gasoline leak by virtue of its "Products completed operations hazard," and the pollution exclusion does not remove from coverage damage claims made by third parties where the damage is caused by the insured's product.

The absolute pollution exclusion contained in both policies issued by Federated provided the insurance policy would not cover:

"f. (1) 'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time.

"(2) Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants."

"In Kansas, the general rule is that exceptions, limitations, and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, Syl. ¶ 2, 840 P.2d 456 (1992).

We first consider if, under the policy, gasoline leaking from an underground storage tank is a "pollutant." Where the language of a contract is clear, we must enforce the terms as written and not look for meanings that do not appear on the instrument's face. See *Bell v. Patrons Mut. Ins. Ass'n,* 15 Kan. App. 2d 791, 794, 816 P.2d 407, *rev. denied* 249 Kan. 775 (1991). The insurance policy provides its own definition of pollutants:

"Pollutants means one or more solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed."

Terms within an insurance contract are to be given their plain, ordinary and popular meanings where the policy is clear and unambiguous. *E.g., American Media, Inc. v. Home Indemnity Co.,* 232 Kan. 737, Syl. ¶ 2, 658 P.2d 1015 (1983). *Farm Bur. Mut. Ins. Co. v. Laudick,* 18 Kan. App. 2d 782, 784, 859 P.2d 410, *rev. denied* 253 Kan. 857 (1993). According to Black's Law Dictionary 318 (6th ed. 1990), "contamination" is a "[c]ondition of impurity resulting from mixture or contact with foreign substance." While the gasoline was segregated in a storage tank, or pumped into a gas tank, the liquid was not a contaminant, *Action Auto Stores, Inc. v. United Capital Ins. Co.,* 845 F. Supp. 428, 438-39 (W.D. Mich. 1993) (gasoline in a storage tank is not a pollutant); once it escapes into another medium such as a neighbor's basement, it would become a contaminant and thus a pollutant under the policy.

Despite the clear logic of such a holding, Crescent maintains that gasoline is not a contaminant and its leaking is not a pollutant. Crescent argues that the word contaminant "is not to be interpreted quite so literally." Crescent points to cases holding that sewage, *U.S. Fidelity & Guar. Co. v. Armstrong,* 479 So. 2d 1164 (Ala. 1985), and asbestos fibers, *Continental Cas. Co. v. Rapid,* 177 App. Div. 2d 61, 581 N.Y.S.2d 669 (1992), are not pollutants and to cases supporting the broad principle that pollution clauses are intended to exclude liability for environmental damage, *Westchester Fire Ins. Co. v. City of Pittsburg, Kan.,* 768 F. Supp. 1463, 1468-69 (D. Kan. 1991), or only exclude knowing emissions

of pollutants over an extended period of time, *Thompson v. Temple*, 580 So. 2d 1133 (La. App. 1991).

Cases in some jurisdictions may have limited the scope of the definition of pollutant under the exclusion in a number of ways, but we are not constrained to do so. Gasoline escaping from its place of confinement is clearly a pollutant, even though the United States District Court for Kansas limited the concept as follows: "In other words, a 'pollutant' is not merely any substance that may cause harm to the 'egg shell plaintiff,' but rather it is a toxic or particularly harmful material which is recognized as such in industry or by governmental regulators." *Westchester Fire*, 768 F. Supp. at 1470. We hold that seeping gasoline qualifies as a pollutant. Even if we were to accept the restriction imposed by *Westchester Fire*, gasoline is regulated by a number of environmental laws. *E.g.*, K.S.A. 65-34,100 *et seq.*

Crescent asks us to apply the holding of *Thompson v. Temple*, which limited the scope of what "pollution" is covered by the pollution exclusion. The *Thompson* court determined that the exclusion applied to "active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time." 580 So. 2d at 1134. However, *Thompson* was based on a Louisiana rule of interpretation, unlike ours in Kansas, which rejects the common meaning of the terms as a basis for determining whether an instrument is clear and instead immediately considers extrinsic evidence of the parties' intent. 580 So. 2d at 1135. Thus, the court looked at the original purpose of the insurance industry in creating the exclusion. In Kansas, we look to the wording of the policy and apply it as it is clearly written.

New York reached results similar to Louisiana in *Continental Cas. Co. v. Rapid*, 177 App. Div. 2d 61. New York rejected an approach which looked to the common meaning of the words of the exclusion and instead looked at the history of the exclusion in New York to attempt to determine what insurers intended for it to do. According to that court:

"In the context of the exclusion clause we hold that as limited by 'industry related activities', its reach extends to environmental pollution occasioned by intentional discharge of a pollutant in the course of manufacturing or distribution

activities by the producer of a product, but does not embrace the harm inflicted by a product fully and finally launched into the stream of commerce, and over which the manufacturer no longer exercises any control." 177 App. Div. 2d at 69.

Crescent argues that we should follow these decisions and hold that the pollution exclusion applies only to active intentional industrial pollution. Such an interpretation might be proper elsewhere, but in Kansas, the meaning of the clause must come from the language contained in the policy.

In Kansas, the test to be applied in determining the intention of the parties is " 'what a reasonable person in the position of the insured would understand it to mean.' " *Crawford v. Prudential Ins. Co. of America*, 245 Kan. 724, 729, 783 P.2d 900 (1989). Consequently, an unambiguous insurance policy will be enforced according to the plain and ordinary meaning of the words it uses. *American Media Inc. v. Home Indemnity Co.*, 232 Kan. 737, Syl. ¶ 2. Ambiguity does not arise unless there is genuine uncertainty as to which of two or more possible meanings is proper. *House v. American Fam. Mut. Ins. Co.*, 251 Kan. 419, 427, 837 P.2d 391 (1992). Where in common sense there is no ambiguity, the court should not strain to create ambiguity. *Bell v. Patrons Mut. Ins. Ass'n*, 15 Kan. App. 2d 791, Syl. ¶ 3.

The Florida Supreme Court, following interpretive rules similar to ours, rejected arguments that the drafting history of the pollution exclusion clause made it ambiguous where no ambiguity arose from the language of the policy itself. *Dimmitt Chevrolet v. Southeastern Fidelity*, 636 So. 2d 700, 705 (Fla. 1993).

This is not a case where the language permits multiple conflicting interpretations. We will not create ambiguity where none exists. Limiting the definition of pollution to intentional industrial pollution has no basis in the language of the policy. We hold the policy definition of "pollutants" includes gasoline which has escaped and caused contamination to neighboring property.

Crescent also argues that the definition of "hazardous substance" found in the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.* (1988) should control. That definition explicitly excludes

petroleum. 42 U.S.C. § 9601(14) (1988). At least one court has recently considered and rejected a similar argument. *Smith v. Hughes Aircraft Co.*, 10 F.3d 1448, 1453 (9th Cir. 1993). It is the definition provided by the contract, not that within a federal statute not even mentioned by the contract, that evidences the intention of the parties. Moreover, even if the federal statutory scheme for controlling pollution were relevant, Crescent provides no persuasive reason why CERCLA's definition should control rather than those of other acts which bring petroleum products within their provisions. See, *e.g.*, Solid Waste Disposal Act, 42 U.S.C. §§ 6991-6991i (1988); Water Pollution Prevention and Control Act, 33 U.S.C. §§ 1251-1387, 1414a (1988), Water Resources Planning Act (1988).

Our conclusion that the pollution exclusion precludes coverage for leaks of petroleum products finds support in a number of cases from other jurisdictions. *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118 (2d Cir. 1990); *Guilford Industries, Inc. v. Liberty Mut. Ins. Co.*, 688 F. Supp. 792, 794 (D. Me. 1988), *aff'd* 879 F.2d 853 (1st Cir. 1989) ("the exclusion is clear and unambiguous"; oil fell within the definition of pollution as any liquid irritant or contaminant); *Union Mut. Fire Ins. Co. v. Hatch*, 835 F. Supp. 59, 65-66 (D.N.H. 1993) (policy language was clear and unambiguous and using the ordinary meanings of the words, gasoline leaking from underground storage tank was a pollutant); *Vantage Dev. v. American Env. Tech.*, 251 N. J. Super. 516, 598 A.2d 948 (1991); *American States Ins. Co. v. Skrobis*, 182 Wis. 2d 445, 513 N.W.2d 695 (Ct. App. 1994) (pollution exclusion unambiguously precluded coverage of property damage arising from a diesel fuel spill).

Our decision is consistent with the recent ruling of our court in *Farm Bur. Mut. Ins. Co. v. Laudick*, 18 Kan. App. 2d 782. *Laudick* was factually similar to our case in that it involved leaking petroleum products, but the decision there turned on the meaning of the word "sudden" as an exception to the application of a pollution exclusion clause. "Sudden" was given a temporal meaning combining both the elements of without notice or warning and quick or brief in time. Because the leakage in *Laudick*

occurred over a long period of time, the exclusion was deemed to apply and preclude coverage, a result consistent with the one we reach herein.

Just as courts have held that petroleum products are included as pollutants, they have also rejected the argument that to be excluded the insured must have polluted intentionally. See *W.H. Breshears, Inc. v. Federated Mut. Ins. Co.*, 832 F. Supp. 288 (E.D. Cal. 1993) (damage from vandals' release of stored gasoline unambiguously excluded); *Vantage Dev. v. American Env. Tech*, 251 N.J. Super. 516 (exclusion applied to oil spill caused by third party dumping).

Crescent argues that even if leaking gasoline falls within the definition of pollution, excluding coverage puts too much weight on the exclusion clause and, read as a whole, the policy provides coverage. Crescent's argument is threefold: (1) that the products-completed operations hazard covers gasoline as Crescent's "product"; (2) that excluding coverage for Crescent's gasoline "product" would reduce the product coverage to an absurdity; and (3) that the pollution exclusion only covers remediation and cleanup costs and not property damage to third persons.

The policy's products-completed operations coverage "includes all 'bodily injury' or 'property damage' occurring away from premises you own or rent and arising out of 'your product'." Crescent's "product" was defined to include "any goods or products . . . sold, handled, distributed or disposed by . . . you." Crescent contends that this language would cover property damages arising out of gasoline Crescent handles, sells, or distributes and that if this were limited by a literal interpretation of the pollution exclusion the clause would be rendered an absurdity. Therefore, Crescent maintains, harmonizing the policy's provisions requires interpreting the pollution exclusion to apply only to cleanup and remediation damages, not to damages to third parties. Upon analysis of the cornerstone of this argument—that the products-completed operations coverage would be rendered an absurdity—cannot be sustained.

The pollution exclusion clause excludes coverage for damages caused by "the actual, alleged or threatened discharge, dispersal,

release or escape of pollutants," and not damages that might occur in the regular use of such substance in the absence of a discharge, dispersal, release, or escape. Crescent's petroleum product (gasoline), as we have previously held, is not a "pollutant" until introduced into an environment in which it does not belong, *i.e.*, the soil.

In fact, even though coverage for pollution is excluded, the record shows Federated paid claims arising out of the sale of allegedly tainted fuel. Furthermore, Crescent deals in products other than gasoline which the completed operations clause would cover. Properly analyzed, excluding leaking gasoline from the coverage of the policy does not lead to an absurd interpretation, but rather removes only a specific injury caused by a specific product:

"Plaintiff also argues that the terms 'contaminant,' 'irritant,' and 'chemicals,' viewed broadly and in isolation, are meaningless. Such a construction cannot be sanctioned, it suggests, because any substance would meet the exclusion, eliminating insurance coverage in all situations. . . . Plaintiff is correct that almost any substance might fall within the exclusion, *but it can only do so in certain very precisely drawn circumstances: if it is an irritant or contaminant. The provision is, therefore, far from all-inclusive or meaningless.*" 688 F. Supp. at 794. (Emphasis added.).

We are not alone in our determination that the products-completed operations clause does not cover hazards excluded by the pollution exclusion. See *Park-Ohio Industries, Inc. v. Home Indem. Co.*, 975 F.2d 1215, 1223 (6th Cir. 1992). Moreover, and most importantly, the adjoining landowners do not raise product liability claims, but sue solely based on Crescent's pollution.

Nevertheless, the cases Crescent cites for the proposition that damages to third parties are not excluded by the pollution exclusion clause merit discussion. Crescent mistakenly relies on cases which reached the conclusion that the exclusion did not apply because there was no "pollution." See *Molton, Allen & Williams, Inc. v. St. Paul F. & M. Ins.*, 347 So. 2d 95 (Ala. 1977) (sand and dirt washing into lake); *Minerva Enter., Inc. v. Bituminous Casualty Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993) (raw sewage backed up into trailer home); *Atlantic Mutual Ins. Co. v. McFadden*, 413 Mass. 90, 595 N.E.2d 762 (1992) (lead paint poi-

soning); *West American Insurance Co. v. Tufco Flooring East*, 104 N.C. App. 312, 409 S.E.2d 692 (1991) (fumes from floor cleaner ruined chicken parts). There is no support for the argument that the exclusion does not apply to damages suffered by third parties. In actuality, many courts have applied the pollution exclusion to claims of third parties. See *Park-Ohio Industries, Inc. v. Home Indem. Co.*, 975 F.2d at 1215; *Travelers Ins. v. Waltham Indus. Laboratories*, 883 F.2d 1092 (1st Cir. 1989); *Guilford Industries, Inc.*, 688 F. Supp. 792; *American Motorists Ins. Co. v. General Host Corp.*, 667 F. Supp. 1423 (D. Kan. 1987); *League of Minn. Cities Ins. v. Coon Rapids*, 446 N.W.2d 419 (Minn. App. 1989).

The clear language of the pollution exclusion excludes coverage for property damage caused by gasoline leaking from Crescent's underground tanks. The products-completed operations provision does not require coverage in order to provide the coverage the insured should reasonably expect from the wording of the policy.

Affirmed.