64 F.3d 537
 FEDERATED MUTUAL INSURANCE COMPANY, a Minnesota corporation,
and Grain Dealers Mutual Insurance Company,
Plaintiffs-Counter-Claim-Defendants-Appellees,
v.
BOTKIN GRAIN CO., a Kansas corporation,
Defendant-Counter-Claimant-Appellant,
Insurance Environmental Litigation Association and Aetna
Casualty and Surety Company, Amici Curiae.
 No. 94-3245.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 17, 1995.
 
 1
 Charles E. Millsap, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for appellant.
 
 
 2
 Timothy Finnerty, McDonald, Tinker, Skaer, Quinn & Herrington, P.A., Wichita, KS, for appellee, Federated Mut. Ins. Co.
 
 
 3
 Chris Cole (Lee Woodard and Michael M. Walker, with him on the brief), Woodard, Blaylock, Hernandez, Roth & Day, Wichita, KS, for appellee, Grain Dealers Mut. Ins. Co.
 
 
 4
 Thomas W. Brunner, John E. Barry, Dennis A. Tosh, of Wiley, Rein & Fielding, Washington, DC, for amicus curiae Ins. Environmental Litigation Ass'n.
 
 
 5
 Edward Zampino, Peter E. Mueller, Victor C. Harwood, III., of Harwood Lloyd, Hackensack, NJ and Dennis Brown of Long & Jaudon, Denver, Co., for amicus curiae Aetna Cas. and Sur. Co.
 
 
 6
 Before HENRY and LOGAN, Circuit Judges, and ELLISON,* Senior District Judge.
 
 
 7
 ELLISON, Senior District Judge.
 
 Statement of the Case
 
 8
 Insurers Federated and Grain Dealers brought this action seeking a declaratory judgment that their comprehensive general liability and umbrella policies did not provide coverage for a state ordered cleanup of petroleum groundwater at a fuel depot owned by Botkin. The parties filed cross motions for summary judgment, and the district judge entered summary judgment in favor of the insurers, holding that the phrase "sudden and accidental" was unambiguous and possessed an objective temporal meaning; that there was no evidence that a "sudden and accidental" discharge occurred, and therefore the insurance companies met their burden of proving that the loss at issue was not sudden and accidental; and that the clarification of the Federated policy did not change the finding of no coverage. Botkin filed a motion to alter or amend, which was granted only to decide the duty to defend issue. On that issue, the district court also granted summary judgment to the insurers.
 
 Facts
 
 9
 At issue here is the Argonia Bulk Fuel Plant owned and operated by Botkin from April of 1978 through the latter part of 1989. The plant, which included five above ground fuel storage tanks for gasoline and diesel fuel, was operated by Mobil Oil Company from 1957 to the time of its sale to Botkin.
 
 
 10
 In 1989, a homeowner residing near the plant complained that he had gasoline in his water well. The Kansas Department of Health and Environment (KDHE) was contacted, and mandated a remediation plan to clean up the site. Botkin asserts that it is entitled to its response costs from the insurers under the terms of the policies.
 
 
 11
 Federated insured Botkin from 1978 to 1986 with both liability and umbrella policies. The liability policies are standard comprehensive general liability (CGL)[1] policies wherein the companies would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence." An occurrence is defined in the policies as "an accident, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the insured." Property damage is defined as:
 
 
 12
 (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
 
 
 13
 The CGL policies also contained the following pollution exclusion:
 
 
 14
 This insurance does not apply ... to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.
 
 
 15
 The CGL policies from 1983 to 1986 contained a clarification of the pollution exclusion, which provides:
 
 
 16
 It is agreed that the unintentional discharge, dispersal, release or escape of any liquid from a liquid storage tank or from any underground piping or connections leading to or from a liquid storage tank shall be deemed sudden and accidental with respect to exclusion (f) [the pollution exclusion].
 
 
 17
 Federated also issued to Botkin umbrella policies from May 1978 to May 1986. The umbrella policies have insuring agreements which state:The Company hereby agrees, subject to the limitations, terms and conditions, hereinafter mentioned, to pay all sums which the Insured shall be obligated to pay ... caused by or arising out of each occurrence happening anywhere in the world, during the policy period.[2]
 
 
 18
 Grain Dealers issued a CGL policy to Botkin which was in effect from April 1987 to April 1988. The policy provided as follows:
 
 
 19
 The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury; or property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
 
 
 20
 The Grain Dealers' policies also include the following pollution exclusion:
 
 
 21
 This insurance does not apply: ... (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.
 
 
 22
 The definitions of occurrence and property damage are substantially the same as the definitions contained in the Federated policies.
 
 
 23
 Archie LaGrant Watts, who operated the plant for Mobil, recalled no fuel tank leaks during his operations. He recalled a fuel line leak which had a minimal effect due to the immediate closing of a shut off valve. He also recalled occasional spills of fuel onto the ground when filling delivery trucks, and small spills from faulty seals on trucks delivering fuel to the depot. He also testified to fuel shortages as indicated by audits, but did not know the cause of the shortages. He did not have any idea where the gasoline which contaminated the ground water came from. He admitted that, when the tanks were removed, there was a discoloration under one tank which would indicate a leak of some sort.
 
 
 24
 Similarly, Mr. Botkin was not aware of any leaks or spills during the time Botkin operated the facility, and specifically was unaware of any event where a large amount of fuel was leaked onto the ground. He also did not know when or how the contamination occurred. An employee of the KDHE, however, opined that it would be possible for several small spills over a long period to cause the contamination.
 
 Analysis
 Standard of Review
 
 25
 When deciding an appeal from a grant or denial of summary judgment, an appellate court reviews the record below and decides the case de novo, applying the same legal standard used by the district court. Quaker State Minit-Lube, Inc. v. Fireman's Fund Insurance Company, 52 F.3d 1522, 1526-27 (10th Cir.1995). Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 26
 I. Interpretation of "Sudden and Accidental"
 
 
 27
 Botkin urges that the Pollution Exclusion is ambiguous, and that in the alternative, the temporal quality ascribed to the word "sudden" should be applied to the inception rather than the duration of the pollution. We have held, however, in United States Fidelity & Guaranty Company v. Morrison Grain Company, Inc., 999 F.2d 489, 493 (10th Cir.1993) (Morrison II ), that, under Kansas law, the term "sudden and accidental" is unambiguous and has an objective temporal meaning referring to the both the inception and duration of the pollution. Botkin asserts that we should reverse U.S.F. & G. v. Morrison Grain, but provides us no basis for doing so. See Anaconda Minerals Co. v. Stoller Chemical Co., 990 F.2d 1175, 1178 n. 4 (10th Cir.1993). We decline to reverse, and find that the trial court was correct in determining that the language of the pollution exclusion is unambiguous and has an objective temporal meaning referring to both the inception and duration of the pollution.
 
 II. Estoppel and Certification
 
 28
 Botkin also argues that the district court erred in granting summary judgment to the insurers in that they should be estopped from asserting an interpretation of sudden and accidental which differs from the representations that the insurers made to the Kansas Insurance Commissioner. Botkin has suggested that this estoppel argument is grounds for reversal. In the alternative, Botkin suggests that this question of Kansas Public Policy should be certified to state court.
 
 
 29
 Botkin contends that the phrase "sudden and accidental" should be interpreted as a clarification of the "occurrence" definition. The insurers contend that a "sudden and accidental" event must be brief or short in duration and not intended, expected or anticipated. Botkin argues that, because the insurers represented to the Kansas Insurance Commissioner, when seeking approval of the pollution exclusion in 1970, that it was merely a clarification, they should be estopped from taking any other position now. Botkin relies on the following explanation provided to the Insurance Commissioner:
 
 
 30
 Coverage for pollution or contamination is not provided in most cases under the present policies because the damages can be said to be expected or intended and thus are excluded by the definition of occurrence. The above exclusion [the pollution exclusion] clarifies this situation so as to avoid any question of intent. Coverage is continued for pollution or contamination caused injuries when the pollution or contamination results from an accident.
 
 
 31
 The Commissioner, in approving the exclusion, replied:
 
 
 32
 In closing, although we are in agreement that pollution and contamination need some type of outlines established, it should be recognized by the [insurance] industry that there can be purely accidental pollution and there should be coverage provided for the insured that is not at fault.
 
 
 33
 In advancing this argument, Botkin urges the court to adopt the reasoning of the court in Morton Intern., Inc. v. General Accident Insurance Co. of America, 134 N.J. 1, 629 A.2d 831 (N.J.1993). That court held that insurance companies should be estopped from asserting an effect of the pollution exclusion beyond that represented to state regulatory authorities.
 
 
 34
 We find that the position urged by Botkin conflicts with Kansas law on the interpretation of insurance policies and the application of the doctrine of estoppel. First, under Kansas law, if policy language is clear and unambiguous, the policy "must be enforced according to the plan, common and popular meaning of its terms." Morrison II, 999 F.2d at 492. See also Coleman Company, Inc. v. California Union Insurance Company, 960 F.2d 1529, 1536 (10th Cir.1992) (Kansas rules for interpreting insurance policies do not include consideration of extrinsic evidence). As noted above, the pollution exclusion is clear and unambiguous, therefore we must ascertain the intent of the parties according to the plain language of the policy and cannot consider the extrinsic evidence of the representations made to the Kansas Insurance Commissioner.
 
 
 35
 The doctrine of estoppel does not change the result mandated by the rules of contract construction. "Waiver and estoppel may be invoked to forestall the forfeiture of an insurance contract, but they cannot be used to expand its coverage." Western Food Products Company, Inc. v. United States Fire Insurance Company, 10 Kan.App.2d 375, 699 P.2d 579 (Kan.App.1985); Topeka Tent and Awning Co. v. Glen Falls Insurance Company, 13 Kan.App.2d 553, 774 P.2d 984 (Kan.App.1989).
 
 
 36
 We additionally note that the Kansas Court of Appeals has recently rejected a similar estoppel argument in Crescent Oil Company, Inc. v. Federated Mutual Insurance Company, 20 Kan.App.2d 428, 888 P.2d 869 (Kan.App.1995). In distinguishing the circumstances in Crescent from the facts of a Louisiana case, the Crescent court noted: "Thus the [Louisiana] court looked at the original purpose of the insurance industry in creating the exclusion. In Kansas, we look to the wording of the policy and apply it as it is clearly written." The court went on to state:
 
 
 37
 Crescent argues that we should follow these decisions and hold that the pollution exclusion applies only to active intentional industrial pollution. Such an interpretation might be proper elsewhere, but in Kansas, the meaning of the clause must come from the language contained in the policy.
 
 
 38
 Id. 888 P.2d at 872 (emphasis ours). We are persuaded by this analysis and statement of Kansas law, and note that it is consistent with our own analysis.
 
 
 39
 In that Kansas law on contract interpretation and estoppel is clear, we see no reason to certify this question to state court.
 
 III. Application of the Exclusion
 
 40
 Botkin also argues that the Court erred in granting summary judgment to the insurers on the pollution exclusion based on their assertion that Botkin can not identify any sudden discharge of the gasoline. Botkin argues that the insurers have the burden of proving an exception to an exclusion (e.g., "sudden and accidental"), and that they don't meet that burden by arguing that Botkin has not identified any sudden discharge of the fuel. Botkin relies on the following language for its assertion that the insurers have the burden of proof on this issue:
 
 
 41
 Kansas courts generally have allocated the respective burdens of proof to the insured and insurer consistent with the basic distinction between coverage clauses and exclusionary clauses. In other words, the insured has the burden of proving a loss of the type included in the general coverage provisions, and the insurer has [the] burden of proving the applicability of an exclusionary clause. Since the "sudden and accidental" exception appears within the pollution exclusion, the Kansas case law would require the insurer to prove both damage from pollution and facts which disqualify the exception. Consequently, plaintiffs have the burden of proving the facts which show the discharge or release was not sudden and accidental.
 
 
 42
 United States Fidelity & Guaranty Company v. Morrison Grain Company, Inc., 734 F.Supp. 437, 443 (D.Kan.1990), aff'd, 999 F.2d 489 (10th Cir.1993) (Morrison I ) (citations omitted). Assuming[3] that this is a correct statement of Kansas law, we see no error in the district court's analysis of this issue.
 
 
 43
 Construing the evidence in the light most favorable to Botkin Grain (and assuming the gasoline came from the fuel depot) there are two possible "sources" of the gasoline found in the groundwater. First, Mobil employee Watts testified as to several small spills over an extended period of time, and the KDHE takes the position that these small spills could cause the contamination. Second, there is some evidence as to ground discoloration under tank five, indicating an escape over time. Neither of these potential causes of the contamination is sudden or accidental. The trial court properly granted summary judgment on this issue.
 
 
 44
 This, however, does not resolve the issue regarding the policies with the "clarification." The "clarification" provides as follows:
 
 
 45
 It is agreed that the unintentional discharge, dispersal, release or escape of any liquid from a liquid storage tank or from any underground piping or connections leading to or from a liquid storage tank shall be deemed sudden and accidental with respect to exclusion (f) [the pollution exclusion].
 
 
 46
 In this case, there is some evidence of a leak in a liquid storage tank. Thus, summary judgment on the exclusion, as modified by the clarification, is inappropriate.
 
 
 47
 We note that the trial court first held that summary judgment was appropriate on the policies with the clarification because there was no evidence that the contamination came from a discharge from a storage tank or underground piping. In its Order on the motion for reconsideration, the trial court acknowledged the evidence that the contamination came from the storage tank, but held that there was no evidence of an occurrence during the policy period. We have reviewed the entire record on appeal, including the extensive briefs on summary judgment, and find that the issue of evidence of occurrence was not addressed by the parties. Thus summary judgment could not rest on the insuring language of the policy. See Celotex Corp. v. Catrett, 477 U.S. 317, 325-26, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (district courts have power to enter summary judgment sua sponte, "so long as the losing party was on notice that she had to come forward with all of her evidence").
 
 
 48
 With respect to the duty to defend, we affirm the trial court on all policies except for the Federated policies containing the clarification. We decline to address the remaining issues on appeal given that they were not ruled on by the trial court. The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable James O. Ellison, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 [1]
 There is some indication in the record that some of these policies were special multi-peril policies instead of CGL policies. There, however is no indication that the language of either the insuring agreement or the pollution exclusion would have been any different for these two types of policies
 
 
 [2]
 One umbrella policy has slightly different language. However, it does require an occurrence during the policy period in order for there to be coverage
 
 
 [3]
 The insurers argue that the holding in Morrison I with regard to this issue is incorrect, and not supported by Kansas law. We do not reach this argument, however, because we find that the insurers met their burden of proof on this issue