(24 P.3d 188)
No. 85,954

ATLANTIC AVENUE ASSOCIATES, *Plaintiff*, v. CENTRAL SOLUTIONS, INC., *Appellee*, v. GREAT NORTHERN INSURANCE COMPANY, *Appellant*.

—

Opinion filed May 18, 2001.

*Mark A. Kinzie*, of St. Louis, Missouri, and *Heather S. Woodson* and *Daniel D. Crabtree*, of Stinson, Mag & Fizzell, P.C., of Leawood, for appellant.

*Jeffrey M. Hensley* and *Theodore C. Beckett, III*, of Beckett & Hensley, L.C., of Kansas City, Missouri, for appellee.

Before RULON, C.J., KNUDSON and JOHNSON, JJ.

KNUDSON, J.: Great Northern Insurance Company (Great Northern) appeals from an adverse judgment of $6,885 entered in favor of Central Solutions, Inc. (Central). The issues on appeal are limited to whether the trial court erred in holding ambiguous the pollution exclusion clause within the underlying insurance policy and awarding attorney fees to indemnify Central.

We reverse the trial court's judgment because the pollution exclusion clause is unambiguous and precludes coverage under the uncontroverted facts of this case.

The underlying facts are: Atlantic Avenue Associates (Atlantic) owns a commercial property at 3122 Brinkerhoff Road, Kansas

City, leased to Central. Central manufactures a variety of topical and hard surface cleaners, including body lotions, shampoos, and other cleaning products that it sells to end users.

A 55-gallon drum containing liquid cement cleaner called "Form Cleaner" developed a small stress fracture while it was being stored on the premises. George Derra, a facility manager for Central, discovered the leak and transferred the remaining product from the leaking drum to 5-gallon pails. He then spread an absorbing compound over the product that had leaked onto the floor, swept it into a fiber drum, added soda ash to the fiber drum, and disposed of the product.

Atlantic brought an action against Central for damages to the leased premises in the amount of $39,219.83 including weakened top surface of the concrete and permanent damage to the slab. Central filed a third-party action against its insurer Great Northern, claiming Great Northern breached the terms of the insurance contract with Central.

In bifurcated proceedings, the trial court first considered Atlantic's claims against Central and awarded Atlantic damages in the amount of $19,618.94, including $7,500 for attorney fees. That judgment is also pending on appeal.

The trial court then tried the indemnification issues within the third-party litigation between Central and Great Northern. The trial court held the insurance policy's pollution exclusionary clause unenforceable and granted Central an indemnification judgment of $6,885, which included $3,500 for attorney fees previously awarded to Atlantic.

Under the liability policy issued by Great Northern, it must pay the indemnification award unless the following exclusionary clause within the policy applies:

"POLLUTION

"A. This insurance does not apply to **bodily injury, property damage, advertising injury**, or **personal injury** arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**:
 1. at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**; . . . ."

Pollutants are specifically defined within the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

The material safety data sheet which complies with the Occupational Safety and Health Administration's (OSHA) Hazard Communication Standard prepared by George Derra reveals the cement cleaner contains 85% phosphoric and 38% hydrochloric acid, and it "[r]eacts with active metals, mild steel, fine aluminum and basic material, soda ash, caustic soda, and chlorine bleach." Contact with eyes "may produce serious chemical burns," inhalation of "vapor or mist can cause damage to nasal and respiratory passages," and ingestion may cause "irritation and damage to mucous membranes." Furthermore, steps to be taken in case of spill are: "Absorb spills with dry sand or earth, then place chemical in waste container for disposal. Neutralize washings with base, such as soda ash or lime." As control measures for protection it is recommended to use NIOSH/MSHA approved respiratory protection, rubber gloves, safety glasses, and a rubber apron.

The material safety data sheet is "written or printed material concerning a hazardous chemical which is prepared in accordance with paragraph (g) of this section." 29 C.F.R. § 1910.1200(c) (1999). Section (g) states: "Chemical manufacturers and importers shall obtain or develop a material safety data sheet for each hazardous chemical they produce or import."

The trial court gave the following explanation for its decision:

"After much consideration the Court finds that the contract at issue is ambiguous. The definition of the exclusion is so broad that, if applied to materials stored in the warehouse of the insured, there is no substance not covered by the exclusion. The cases make it clear that the facts must determine whether or not the exclusion is ambiguous. While the [*City of Salina, Kan. v. Maryland Cas. Co.*, 856 F. Supp. 1467 (D. Kan. 1994)] case makes it clear that substances such as strong acids can be viewed as an irritant or a contaminant when the substances are released into the environment, that is not the facts [*sic*] here. The [*Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65 (1997)] case requires that the Court look at what a reasonable insured would have expected and the Court cannot find that Central Solutions would have paid money for no coverages. The Court is not convinced by the language of the insurance contract that the exclusion should be applicable when materials stored at a warehouse merely leak

onto the floor where they are stored, and this would constitute 'pollution.' The Court is convinced that the exclusion does not apply in the facts of this case."

Great Northern argues the trial court erred in concluding the exclusionary clause regarding pollution was ambiguous and did not apply under the facts of the case. Construing or interpreting Great Northern's policy affords an appellate court unlimited review. See *Elliott v. Farm Bureau Ins. Co., Inc.*, 26 Kan. App. 2d 790, 793, 995 P.2d 885 (1999), *rev. denied* 269 Kan. 932 (2000).

The general rule is that exceptions, limitations, and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms. *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, Syl. ¶ 2, 840 P.2d 456 (1992). Where the language of a contract is clear, the court must enforce the terms as written and not look for meanings that do not appear on the instrument's face. *Crescent Oil Co. v. Federated Mut. Ins. Co.*, 20 Kan. App. 2d 428, 431, 888 P.2d 869 (1995).

Central argues the Form Cleaner is a finished consumer product sold to the end users and it is not a "pollutant." The trial court agreed with the arguments of Central and ruled that the exclusionary clause did not apply because the cement form cleaner was a finished product, not raw material, stored in the warehouse which leaked only within the warehouse and, therefore, it was not a "pollutant." The court held that Central would have been basically uninsured if the exclusionary clause applied to the facts of the case, as all of Central's products could fall within the broad definition of pollutant.

There are two Kansas cases which discuss the application of a pollution exclusion clause in an insurance policy. In *Crescent*, gasoline from the underground storage tanks leaked into the basement of a building on the adjoining property. The insurance policy included a products-completed operations hazard endorsement and an absolute pollution exclusion, and the trial court found no coverage because of the pollution exclusion. The absolute pollution exclusion provided the policy would not cover:

" 'f. (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.' " 20 Kan. App. 2d at 430.

The policy provided its own definition of pollutants as " 'one or more solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.' " 20 Kan. App. 2d at 431. This definition is very similar to the definition of pollutant in the Great Northern policy.

The Court of Appeals, affirming the trial court, stated:

"This is not a case where the language permits multiple conflicting interpretations. We will not create ambiguity where none exists. Limiting the definition of pollution to intentional industrial pollution has no basis in the language of the policy. We hold the policy definition of 'pollutants' includes gasoline which has escaped and caused contamination to neighboring property." 20 Kan. App. 2d at 433.

In the instant case, just as in *Crescent*, we need not search for a definition of "pollutant," because Great Northern's insurance policy defines it as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

Central argues the damage to the surface area of the concrete floor was caused by the leakage of one of Central's finished consumer products that it sells to the public and the finished consumer products is not a pollutant. However, there is no exception made for finished consumer products from the list of the pollutants. Our duty to narrowly construe an exclusionary clause within an insurance policy does not permit us to create an exception out of whole cloth.

Central also argues the definition of pollutants is so broad to render the entire exclusion ambiguous. The president of Central in testimony given by affidavit noted that thousands of consumer products contain acids, including orange juice; however, that does

not make the finished consumer product an acid. We find this argument unpersuasive under the uncontroverted facts of this case.

It is difficult to imagine orange juice and low foam acid cleaner in the same category of products. Orange juice will not cause serious chemical burn by contact with eyes or irritation and damage to mucous membranes in case of ingestion. Central argues the definition of pollutants is so broad it practically included everything that Central produces and the insurance policy would offer no coverage if the exclusion clause applies. However, Central's other products such as body lotions and shampoos would not have caused the particular kind and extent of damages to the concrete floor of the warehouse, and they would not be defined as pollutants.

In its decision, the trial court considered two cases that addressed somewhat similar issues to the issue now presented. In *Americold Corp.*, plaintiffs' food products stored in a warehouse were contaminated with smoke and toxic substances from a hostile fire. The insurance policy's pollution exclusion eliminated coverage for " ' "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants,' " which included "smoke" and "soot." 261 Kan. at 821. The insurance policy also contained a "hostile fire" endorsement called "Amendment of Pollution Exclusion," which provided: " '[The pollution exclusion provisions] do not apply to "bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire.' " 261 Kan. at 821.

The Supreme Court found the pollution exclusion language in the policy was ambiguous when applied to the facts and was interpreted to include coverage for damage caused by smoke from a hostile fire. 261 Kan. at 825. However, *Americold Corp.* dealt with an insurance policy which contained an amendment limiting the scope of the pollution exclusion and provisions of doubtful or conflicting meaning, which made the policy ambiguous. Here, the exclusionary clause of Great Northern's policy does not contain terms of doubtful meaning or conflicting provisions.

In *City of Salina*, the issue was whether the insured should be required to indemnify the city for damages caused by the backup into a residence of highly alkaline wastewater from the city's sewer.

The city argued the exclusion's definition of pollutants was so broad as to render the entire exclusion ambiguous. After examining the insurance contract and the undisputed facts, the court concluded that the "pollution exclusion" was unambiguous. 856 F. Supp. at 1477.

As previously noted, the trial court found *City of Salina* distinguishable because the wastewater was released into the environment. We readily recognize the distinction but fail to understand how it is relevant to an analysis of whether the exclusionary clause of the Great Northern policy is ambiguous. As stated in appellant's brief:

"In *City of Salina*, the court considered a Pollution Exclusion Clause that is virtually identical to the pollution exclusion clause in the present case. The court first determined that the exclusion was unambiguous. [Citation omitted.] The court then noted that the damage causing substance in that case was a highly caustic substance and under any circumstances would be considered an 'irritant or contaminant' as required by the definition of 'pollutant.' [Citation omitted.] In making this determination, the court relied upon the Environmental Protection Agency's classification of the chemical as a 'hazardous substance' and its designation as a 'hazardous substance' under § 102(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 pursuant to 40 C.F.R. § 302.4(a). The court also found it relevant that the MSDS produced by the manufacturer had warned about the harmful effects of alkaline wastewater. [Citation omitted.]"

We agree with the appellant's summary of *City of Salina* and do not agree discharge of the pollutant into the public environment was an important fact in the federal court's interpretation of the pollution exclusionary clause.

After fully considering the language of the exclusionary clause and the definition therein of a pollutant, we conclude the trial court erred in its ruling. The exclusionary clause is unambiguous and does not make any exception for pollutants that are finished consumer products stored on leased premises. The policy definition of pollutants includes Central's cement foam acid cleaner "Form Cleaner," which leaked causing damage to Atlantic's property. Our decision makes unnecessary a specific discussion of whether attorney fees should have been included within the judgment. We re-

verse the judgment of the trial court and remand with directions to enter judgment in favor of Great Northern.

Reversed and remanded with directions.