**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 26 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PEOPLES MORTGAGE CORP.,

    Plaintiff-Appellee,

v.

KANSAS BANKERS SURETY CO.,

    Defendant-Appellant.

No. 02-3063

(D.C. No. 00-CV-2547 KHV)
(D. KAN)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

Defendant Kansas Bankers Surety Company ("the Insurance Company") appeals a

district court judgment in this diversity case ordering it to indemnify Plaintiff People's

Mortgage Corporation ("the Bank") for a pretrial settlement the Bank negotiated with a

former employee. On cross-motions for summary judgment, the district court ruled the

settlement fell within the coverage provisions of the Employment Practices Insurance

Policy issued to the Bank. The court granted partial summary judgment in favor of the

Bank, holding it was entitled to indemnification to the extent it settled the litigation in

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

good faith and for a reasonable amount.  The court reserved for trial the issues of good faith and reasonableness, and the issue of attorneys' fees.  Prior to trial, the parties stipulated that the Bank settled the litigation in good faith.  After trial, the district court ruled that the amount paid was reasonable and entered judgment for the full settlement amount plus interest.  The court also awarded attorneys' fees under a Kansas statutory provision that permits a court to award an insured attorneys fees if the court concludes an insurer's refusal to pay a claim was without just cause or excuse.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We affirm.

I.

On November 5, 1999, the Insurance Company issued an Employment Practices Insurance Policy that insured eight entities in Kansas, Colorado, and New Mexico, including the Bank.  Under the policy drafted by the Insurance Company,[1] the insurer agreed –

> to appoint attorneys and pay the costs of the appointed attorneys to defend the Bank and indemnify the Bank for up to a maximum of one year of claimant's salary which the Bank is legally obligated to pay by reason of any actual or alleged Wrongful Act arising out of the Employment Claim first filed against the Bank during the Policy Period.

The policy defines "Employment Claim" as a civil or arbitration proceeding –

---

[1]  The Insurance Company's President and Senior Vice President drafted the Employment Practices policy.  Both have many years of experience in the insurance industry, but neither has any legal training or background.

2

which is brought and maintained by any past, or present Employee(s) of the Bank for any Wrongful Act in connection with an actual or alleged wrongful dismissal, discharge or termination of employment, <u>breach of a verbal or written employment contract</u>, workplace harassment, failure to promote, or wrongful discipline, except as excluded from coverage under Section VI.

(emphasis added). "Wrongful act" is defined in Section III as –

any actual or alleged:
1. error or misstatement; or
2. misleading statement; or
3. act of omission; or
4. breach of duty; or
5. breach of fiduciary duty; or
6. any other act

by the Bank for which an Employment Claim is made against the Bank except as excluded from coverage under Section IV.

Section IV excludes, <u>inter alia</u>, any employment claim "based upon, arising from, or in consequence of willfully violating, in fact, by the Bank any statute, rule, regulation, agreement or judicial or regulatory order." Section V limits liability to:

(i) all costs and expenses of the attorneys appointed by the Underwriter,
(ii) and up to a maximum of one years [sic] salary or wages of the past or present Employee or Employee Applicant who is making such Employment Claim if the Employee or Employee Applicant is awarded either front pay or back pay of salary or wages for employment services which were not and will not be actually performed
. . . . Salary and wages shall not include insurance premiums, interest, retirement or saving plan contribution/compensation or other benefits.

The policy also contains a $1,000 deductible and a provision limiting total liability, including defense costs, to $250,000.

The Bank sought indemnification for the amount it paid to settle a lawsuit brought by a former employee, Ricardo Gomez. Gomez resigned from the Bank in October 1999 and, in November, demanded a termination payment pursuant to an alleged employment agreement dated February 12, 1997. In support of his demand, Gomez produced a copy of the employment agreement. The agreement contained a provision, Paragraph 11D, that does not appear in the standard employment agreement used by the Bank. Paragraph 11D in the Gomez agreement also appeared in a different font than the remaining agreement. Pursuant to Paragraph 11D, the Bank allegedly agreed to pay Gomez, upon his resignation, a termination payment of 150% of his taxable income for the preceding twelve months, or approximately $329,000. Gomez also demanded payment of commissions for all loans approved and disbursed within 90 days of his resignation. While employed, Gomez received an annual salary of $40,000 plus commissions and other performance-based compensation.

On November 11, 1999, the Bank notified the Insurance Company of the Gomez claim and provided relevant documents. The Bank informed the Insurance Company that it believed Gomez had fraudulently altered his employment agreement by adding a paragraph that did not appear in the original document. Following Gomez' demand, the Bank was unable to locate an original copy of the Gomez employment agreement. By letter dated November 11, 1999, the Insurance Company notified the Bank that the insurance policy might not cover the Gomez claim because the alleged employment

4

agreement stated: "This Agreement shall not be construed as an Employment Contract." The Insurance Company also requested the Bank keep it informed of any developments and notify it immediately if Gomez filed suit.

Gomez filed suit in Colorado court on December 16, 1999, seeking approximately $329,000 in damages. Gomez also sought attorneys' fees and punitive damages pursuant to Colorado statute. The Bank filed a counter-claim alleging Gomez had fraudulently altered the employment agreement. On December 22, 1999, the Bank notified the Insurance Company of the suit. The Insurance Company immediately appointed counsel to represent the Bank and informed the Bank it would pay the costs and expenses of the appointed attorney subject to the policy deductible and liability limit. The Insurance Company also informed the Bank of its belief that the indemnity provisions of the insurance policy did not cover a contractual obligation to make a termination payment.

The Bank and Gomez attended mediation on August 18, 2000. Although invited, the Insurance Company elected not to attend. Immediately prior to mediation, the Bank demanded the Insurance Company authorize payment up to the policy limit to settle the case. The Insurance Company declined. During the course of mediation, the Bank contacted the Insurance Company via telephone again requesting authorization to settle. The Insurance Company agreed to contribute $10,000 toward settlement. Following mediation, at the recommendation of appointed counsel, the Bank agreed to pay Gomez $175,000 to settle the suit. The Insurance Company issued a check for $10,000 and

requested the Bank pay the policy deductible of $1000. The Bank refused and requested

indemnification for the remaining settlement amount. The Insurance Company

maintained the policy's indemnification provisions did not cover the Gomez claim. In

response, the Bank filed this diversity action in federal court seeking reimbursement of

the settlement payment and attorneys' fees.

On appeal, the Insurance Company continues to argue the Gomez claim is not

covered by the insurance policy's indemnification provisions. In addition, the Insurance

Company asserts that any coverage that exists is limited to a maximum of one year of

Gomez' base salary, or $40,000.

## II.

The interpretation of an insurance policy is a question of law which we review de

novo. U.S. Fidelity and Guar. Co. v. Federated Rural Elec. Ins. Co., 286 F.3d 1216, 1218

(10th Cir. 2002). In a diversity case, the district court must apply the substantive law of

the forum state, in this case Kansas.[1] Id. In interpreting an insurance contract under

---

[1] The case was filed in the District of Kansas and the district court applied Kansas law to the interpretation of the contract (assuming, without deciding, that "either Kansas law applies or that no conflict exists between Kansas law and the applicable state law."). Under Kansas law, "the choice of which state's law is applicable to the construction of a[n insurance] contract depends on where the contract is made. For choice of law purposes, a contract is 'made' where the last act necessary to complete the contract occurs." See State Farm Mut. Auto. Ins. Co. v. Baker, 797 P.2d 168, 171 (Kan. App. 1990). The policy does not contain a choice of law provision and the record does not provide any assistance. At oral argument, the parties agreed that Kansas law governed interpretation of the contract. Accordingly, we also will apply Kansas law.

6

Kansas law, terms generally are given their plain and ordinary meaning unless the parties have expressed a contrary intent. See Pink Cadillac Bar and Grill v. U.S. Fid. & Guar. Co., 925 P.2d 452, 456 (Kan. 1996). Where the terms of a policy are ambiguous or uncertain, the construction most favorable to the insured must prevail. See Farm Bureau Mut. Ins. Co. v. Winters, 806 P.2d 993, 996 (Kan. 1991). The test for determining whether a contract is ambiguous is not what the insurer intended the language to mean, but what a reasonably prudent insured would understand the language to mean. Id.

A.

The Insurance Company asserts the district court erred in ruling the Gomez claim fell within the policy provisions. As the insured, the Bank bears the burden of establishing coverage under the policy. See Shelter Mut. Ins. Co. v. Williams, 804 P.2d 1374, 1383 (Kan. 1991). The Bank asserts that Section I(A) covers its claim for indemnification. Section I(A) requires the Insurance Company to "indemnify the Bank for up to a maximum of one year of claimant's salary which the Bank is legally obligated to pay by reason of any actual or alleged Wrongful Act arising out of the Employment Claim."

Based on the underlined language, the Insurance Company first argues that coverage is limited to claims for "salary," and asserts the Gomez claim sought a "termination payment" rather than salary. According to the Insurance Company, a "termination payment does not constitute salary or wages because it was not

7

compensation for services rendered." The Insurance Company's attempt to limit its policy coverage to claims for "compensation for services rendered" ignores the remaining provisions of the insurance policy which expressly provide coverage for employment claims brought by former employees and by employee applicants who did not receive an offer of employment. Damage awards paid to such individuals would never be "compensation for services rendered." In addition, Section V discusses claims for "salary or wages for employment services which were not and will not actually be performed." The policy expressly provides coverage for such claims. The Insurance Company's proposed interpretation conflicts with the express terms of the contract and the district court properly rejected it. The Bank argued, and the district court concluded, that the underlined language does not limit coverage to claims for salary, but instead establishes a limitation on the amount that will be indemnified. This interpretation is reasonable and consistent with the remainder of the insurance policy.

The Insurance Company also argues that because the Gomez claim arose out of alleged contractual obligations rather than an alleged wrongful act, the claim is not covered by the policy. The district court properly concluded that the Gomez claim did allege a "Wrongful Act" as defined in the policy. The Gomez claim alleged the Bank failed to comply with the provisions of its employment agreement with Gomez, a breach of a contractual duty. "Breach of duty" is expressly included in the policy's definition of "Wrongful Acts." In addition, the policy's definition of a covered Employment Claim

8

expressly includes a claim for breach of contract: "Employment Claim means [a civil or arbitration proceeding] brought and maintained by any past or present employee(s) of the Bank for any Wrongful Act in connection with any actual or alleged . . . breach of a verbal or written employment contract." Accordingly, we conclude Section I(A) provides coverage for the Gomez claim.

B.

The Insurance Company next asserts the district court erred in concluding the Gomez claim did not fall within the policy exclusions contained in Sections IV and V. Under Kansas law, the burden is on the insurer to establish that an otherwise covered loss is excluded by a specific policy provision. See Williams, 804 P.2d at 1383. "The general rule is that exceptions, limitations, and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." Atlantic Ave. Assoc. v. Central Solutions, Inc., 24 P.3d 188, 190 (Kan. App. 2001).

The Insurance Company first asserts Section V(a)(ii) precludes coverage because the settlement payment did not constitute front pay or back pay of salary or wages. Section V(a)(ii) states that the Insurance Company "shall be liable to pay only . . . up to a maximum of one years [sic] salary or wages . . . if the Employee . . . is awarded either front or back pay of salary or wages for employment services which were not and will not

9

actually be performed." The district court properly concluded Section V(a)(ii) does not limit policy coverage exclusively to claims for front or back pay. Such an interpretation would be inconsistent with Section 1(A) which expressly provides coverage for any employment claim "arising out of an actual or alleged Wrongful Act." Instead, the provision is properly read to limit the amount of liability.

The Insurance Company also asserts Section IV precludes coverage because the Bank's refusal to pay the termination payment required by the agreement was "willful." Section VI(a)(4) excludes from coverage any employment claim "based upon, arising from, or in consequence of willfully violating, in fact, by the Bank any statute, rule, regulation, agreement or judicial or regulatory order." The district court properly concluded the Bank did not "willfully" violate the employment agreement because it had a reasonable, good faith belief that Gomez had fraudulently altered the agreement and that it was not liable for the termination payment. The Bank's decision to settle the claim is not an acknowledgment that Paragraph 11D in the Gomez employment agreement was valid.

Finally, the Insurance Company asserts that any coverage under the policy is limited to one year of Gomez' base salary of $40,000. The district court concluded the term "salary" is ambiguous and could reasonably be read to include commission and other taxable compensation. The policy's limits on liability are set forth in detail in Section V of the policy. Section V limits liability to "a maximum of one years [sic] salary and

10

wages" in the event the employee is awarded salary for services which will not be performed. Thus, damage awards of both "salary" and "wages" are included. Performance-based incentives are taxable wages. In addition, Section V states "Salary and wages shall not include insurance premiums, interest, retirement or savings plan contribution/compensation or other benefits." Nothing in Section V limits "salary" to base salary. The district court properly concluded the Bank is entitled to reimbursement for the entire settlement amount less the deductible, provided the settlement amount was reasonable.

III.

The Insurance Company next asserts the district court erred in finding the settlement amount was reasonable. The district court made this factual finding following a trial on the issue. We review the court's factual finding for clear error. See Neustrom v. Union Pacific R. Co., 156 F.3d 1057, 1067 (10th Cir. 1998). The Insurance Company argues that no settlement could have been reasonable given that the alleged alteration of the employment agreement was obvious from the face of the document. But the attorney the Insurance Company appointed to represent the Bank recommended settling the case. The Insurance Company refused to participate in the mediation and was not privy to the facts which led its appointed attorney to recommend settlement. The Bank introduced these facts at trial and the district court found these facts persuasive in finding the settlement reasonable. Sufficient evidence in the record exists to support the district

11

court's finding.

The Insurance Company also challenges the district court's award of attorneys' fees following the trial. Under Kansas law, an insured is entitled to attorneys' fees if the insurer refused to pay without just cause to refuse payment. Kan. Stat. Ann. § 40-256. In refusing to pay a claim, an insurance company has a duty to make a good faith investigation of the facts surrounding the claim. Evans v. Provident Life and Accident Ins. Co., 815 P.2d 550, 561 (Kan. 1991). The question of whether an insurer has refused to pay without just cause is a question of fact for the trial court. Id. The award or denial of attorneys' fees under § 40-256 is a matter "in the trial court's sound discretion" and should not be overturned absent an abuse of discretion. Id.

The district court found the Insurance Company unreasonably refused to investigate the Gomez claim and unreasonably refused to participate in the mediation at which the parties discussed the basis for the claim. After hearing the testimony of company principals, the district court concluded the Insurance Company did not deal with the Bank in good faith. After reviewing the record, we conclude the district court did not abuse its discretion in awarding attorneys' fees.

IV.

For the reasons stated above, we AFFIRM the district court's grant of summary judgment to the Bank on the issue of indemnification, we AFFIRM the district court's judgment awarding the Bank the full settlement amount plus prejudgment interest, and we

12

AFFIRM the district court's award of attorneys' fees.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge