CERTIFICATION OF QUESTIONS OF STATE LAW
MONROE G. McKAY, Circuit Judge.
The United States Court of Appeals for the Tenth Circuit submits this request to the Kansas Supreme Court to exercise its discretion to accept the following certified questions of Kansas law pursuant to 10th Cir. R. 27.1 and Kan. Stat. Ann. § 60-3201. The answer to these questions may be determinative of this case now pending in this court, and it appears that there is no controlling precedent in the Kansas Supreme Court.

The Questions

1. In a standard pollution exclusion clause in a liability insurance contract, is the definition of a “pollutant” as “any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste” ambiguous, either because the definition is so broad as to cover virtually any substance, or because it is susceptible of more than one construction and a reasonably prudent insured would not understand the term to cover commonly used products (such as when a farmer uses a common fertilizer on its fields and a nearby party is injured by exposure to the fertilizer)?
2. If the definition of a ‘pollutant’ in the exclusion clause is ambiguous, and must, therefore, be construed in a light most favorable to the insured, is a mist of anhydrous ammonia fertilizer released from a plow during farm fertilizing operations nonetheless a ‘pollutant’ under the exclusion clause, such that the liability claim for injuries caused by exposure to that mist is not covered?
The Kansas Supreme Court may reformulate the questions.

I. Procedural and Factual Background.

A. Denial of Coverage. The facts are uncontroverted. Plaintiff Union Insurance Company (Union) provided a Farm owners-Ranch owners insurance policy to Irsik G&B Farms, Inc. (Irsik Farms) from September 2005 to September 2006. Defendant Karla Mendoza filed a personal injury *798 lawsuit against Irsik Farms and its employee, Bradley Irsik, alleging that they caused her bodily injury by exposing her to a mist of anhydrous ammonia fertilizer on July 14, 2006. Anhydrous ammonia fertilizer places nitrogen into the soil, and is commonly used as a fertilizer. Relying on a pollution exclusion provision in its insurance policy, Union denied coverage for the Mendoza lawsuit. Mendoza obtained a consent judgment from the Irsik defendants for one million dollars, in exchange for a covenant not to execute upon the judgment against them. Union filed an action in the United States District Court for the District of Kansas seeking a declaratory judgment that the liability policy did not cover the Mendoza judgment. The Irsik defendants were voluntarily dismissed from the declaratory action.
B. Underlying Claim. On the day Mendoza was injured, an Irsik Farms employee was applying anhydrous ammonia fertilizer on an Irsik Farms’ field next to where Mendoza was working on road construction. The employee asked Bradley Irsik for help because the fertilizer was not coming out evenly. The fertilizer was stored in a tank on the back of a tractor; it was applied to the soil by flowing through piping from the tank to several holes on shanks on the tractor’s plow and then into the soil. Irsik raised the plow out of the soil to see if the lines were plugged, and looked at the plow to see if vapors were coming out of the tubes. He then held the hydraulic switch down for about three seconds, releasing the anhydrous ammonia into the air. At the time, Mendoza was loading a road sign on the nearby road when a mist of the anhydrous ammonia fertilizer engulfed her. She testified that she could not breathe; her eyes, lungs and throat were burning; and she required medical attention.
C. Policy Language. Union’s policy of insurance to Irsik Farms includes coverage for personal injury liability. The personal liability coverage contains an exclusion, however, for personal injury caused by a ‘pollutant.’ In an endorsement entitled “Farmer’s Comprehensive Personal Liability Insurance,” the liability coverage states:
If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an “occurrence” to which this coverage applies, we will:
a. pay up to our limit of liability for the damages for which the “Insured” is legally liable; and
b. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the “occurrence” equals our limit of liability.
(Aplt. App., Vol., I, at 68; R. Doc. 36, Ex. H, at 1, 08-CV-1096-MLB (D. Kan.) (hereafter “D. Ct. R.”).
The “Exclusions” clause in the Personal Liability endorsement states in relevant part:
... Personal Liability and ... Medical Payments to Others do not apply to bodily injury or property damage:
j. (1) arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
(a) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to you, or any “Insured”. :!{ í¡í ‡
(d) at or from any premises, site or location on which you, or any “Insured” or any contractors or subcontractors *799 working directly or indirectly on your’s or any “Insured’s” behalf are performing operations:
(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by you, or any “Insured”....
* * * *
Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

CThis exclusion does not apply to property damage caused by accidental drift of vapors, fumes, or toxic chemicals as a result of spraying operations.)

(Aplt. App., Vol. I, at 69-71; D. Ct. R., Doc. 36, at 2-4).
D. District Court Ruling. The district court granted Union’s motion for summary judgment, ruling Irsik’s accidental disbursing of anhydrous ammonia was excluded from coverage by the pollution exclusion. It ruled that the language of the pollution exclusion clause and its definition of a ‘pollutant’ are not ambiguous, and that anhydrous ammonia, while useful as a fertilizer in farming operation, is a pollutant. Aplt. App., Vol. II, at 345, 347; D. Ct. R., Doc. 41, at 9, 11. It concluded that “a pollutant under the insurance policy is any irritating or contaminating substance, which may be a solid, liquid, gaseous or thermal substance.” Aplt. App., Vol. II, at 342; D. Ct. R., Doc. 41, at 6. Citing to dictionary definitions, it concluded that an “irritant is a source of irritation, especially physical irritation,” and that “[t]o contaminate means to make impure or unclean by contact or mixture.” Aplt. App., Vol. II, at 342 — 43; D. Ct. R., Doc. 41, at 6-7 (internal quotations omitted). Mendoza has appealed to the Tenth Circuit on the issue of whether Union is liable to her, under its insurance policy covering Irsik Farms, for the consent judgment against the Irsik defendants for her injuries resulting from being sprayed with anhydrous ammonia fertilizer.

II. The Parties’ Positions.

Union argues that anhydrous ammonia is a ‘pollutant’ under the terms of the pollution exclusion clause, and thus is excluded from coverage. Union presented evidence that anhydrous ammonia has known hazardous effects, including respiratory tract, skin and eye burns, and contains one or more components listed as a hazardous air pollutant under the Clean Air Act. It asserts that Mendoza’s injuries of burning in her eyes, throat, lungs and skin further establish that anhydrous ammonia fertilizer is an irritant. Thus, Union argues the anhydrous ammonia is clearly an ‘irritant’ and ‘contaminant’ and, thus, falls within the policy’s definition of a ‘pollutant.’
Mendoza argues that the anhydrous ammonia was being used, as it commonly is, as a fertilizer, and that under these circumstances, it is not a ‘pollutant.’ She contends that the pollution exclusion is ambiguous because any substance could conceivably meet the definition of a ‘pollutant’ under the exclusion. She notes that the definition of a ‘pollutant’ does not define the terms ‘irritant’ or ‘contaminant’ and read literally, are virtually boundless, because there is no substance or chemical in existence that does not irritate or contaminate some person or property. She contends the terms ‘irritant’ and ‘contaminant,’ do not have a plain, ordinary meaning. She further argues that, particularly in a farm owner’s insurance policy, a reasonably prudent insured farmer would not understand the exclusion clause’s definition of a ‘pollutant’ to cover a commonly used farm fertilizer. Thus, she argues that coverage exists because the exclusion *800 must be interpreted narrowly and in a light most favorable to the insured.

III. Kansas Rules of Insurance Contract Construction.

Under Kansas law, an insurer bears the burden of proving that coverage is excluded. Shelter Mut. Ins. Co. v. Williams ex rel. Williams, 248 Kan. 17, 804 P.2d 1374, 1383 (1991). When interpreting insurance contracts, and exclusion clauses in particular, Kansas applies the following rules of construction:
Because the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured. If an insurance policy’s language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense. In such case, there is no need for judicial interpretation or the application of rules of liberal construction. The court shall not make another contract for the parties and must enforce the contract as made.
However, where the terms of an insurance policy are ambiguous or uncertain,' conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail.
To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. Whether a written instrument is ambiguous is a question of law to be decided by the courts. Courts should not strain to create an ambiguity where, in common sense, there is not one. The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean.
Am. Family Mut. Ins. Co. v. Wilkins, 285 Kan. 1054, 179 P.3d 1104, 1109-10 (2008) (quotation marks and bracketed material omitted).

IV. Conflicting Interpretations of this Pollution Exclusion Clause.

Different courts interpreting this same definition of a ‘pollutant’ in liability exclusion clauses have reached different conclusions as to the term’s meaning and as to whether the term is ambiguous under Kansas law. In 1992, a federal district court decision held that this pollution exclusion clause was so broad and imprecise as to be ambiguous. Westchester Fire Ins. Co. v. City of Pittsburg, 794 F.Supp. 353, 355 (D.Kan.1992). The court ruled that the definition of ‘pollutants’ did little to clarify its meaning because under its terms, “[a]ny substance could conceivably be an ‘irritant or containment’ under the right circumstances.” Id. Construing the provision narrowly, the court ruled that “the term ‘pollutants’ contemplates a substance that is particularly harmful or toxic to persons or the environment generally, and not merely those substances harmful to particular persons or property due to special circumstances.” Id. A year later, another federal court also held the definition of “pollutants” in this exclusion clause was ambiguous because it did not define the terms ‘irritant’ or ‘contaminant.’ Regent Ins. Co. v. Holmes, 835 F.Supp. 579, 581 (D.Kan.1993). It held that these terms “admit of no natural or ordinary interpretation ... because it is unclear whether they refer to substances which *801 ordinarily irritate or contaminate, substances which have in fact irritated or contaminated under these particular circumstances, ... or both.” Id. at 582. It agreed with Westchester Fire that any substance could conceivably be an irritant or contaminant, and thus, the exclusion clause failed to use “the type of clear and precise language necessary to exclude coverage otherwise provided for in the policy.” Id.
Another federal district court, however, construing the same definition of pollutants in an exclusion clause held that, under the facts of its case, the exclusion was not ambiguous. City of Salina v. Md. Cas. Co., 856 F.Supp. 1467, 1477 (D.Kan.1994). In contrast to Westchester Fire Ins., which considered whether the insecticide malathion was a pollutant, the City of Salina court ruled that “there can be no reasonable doubt that alkaline wastewater with a pH of 12 constitutes the type of alkali that would be considered an ‘irritant’ or ‘contaminant,’ ” noting that the definition of ‘pollutants’ specifically lists alkalis. Id. In 1995, the Kansas Court of Appeals held that no ambiguity arose from the pollution exclusion clause language itself, and that while gasoline in a storage tank is not a pollutant, once it escapes or leaks from an underground storage tank and contaminates a neighboring property, it becomes a ‘pollutant’ within the policy’s definition. Crescent Oil Co. v. Federated Mut. Ins. Co., 20 Kan.App.2d 428, 888 P.2d 869, 871-73 (1995). In 2001, the Kansas Court of Appeals followed Crescent Oil, holding that the exclusion clause was not ambiguous, and that liquid cement cleaner is a pollutant when it leaks out of a drum, causing damage. Atl. Ave. Assocs. v. Cent. Solutions, Inc., 29 Kan.App.2d 169, 24 P.3d 188, 191-92 (2001).
Nationally, the question of how to interpret this pollution exclusion clause is similarly divided. As the Ninth Circuit recently noted, “[t]he scope of the total pollution exclusion has been- repeatedly litigated, spawning conflicting judicial decisions throughout the country ... [and tjhere exists not just a split of authority, but an absolute fragmentation of authority.” Apana v. TIG Ins. Co., 574 F.3d 679, 682 (9th Cir.2009) (citation, quotation and parenthetical marks omitted). In an exhaustive recitation of the various court interpretations of this pollution exclusion clause, the Ninth Circuit concluded that:
Most State courts fall roughly into one of two broad camps. Some courts apply the exclusion literally because they find the terms to be clear and unambiguous. Other courts have limited the exclusion to situations involving traditional environmental pollution, either because they find the terms of the exclusion to be ambiguous or because they find that the exclusion contradicts policyholders’ reasonable expectations.
Id. at 682 (citations and paragraph formatting omitted).

V. Reasons for Certification.

Kansas law provides that:
[t]he Kansas supreme court may answer questions of law certified to it by ... a court of appeals of the United States ... if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.
Kan. Stat. Ann. § 60-3201; see also 10th Cir. R. 27.1(A)(1) (stating that this court may “certify a question arising under state law to that state’s highest court according to that state’s rules”). We have held that we will only certify questions of state law that are “both unsettled’ and dispositive.” *802 Anaconda Minerals Co. v. Stoller Chem. Co., 990 F.2d 1175, 1177 (10th Cir.1993).
There are several reasons for certification. The question presented is a state-law issue, and it has not been addressed by the Kansas Supreme Court. There are no disputed fact issues, and the questions presented are pure questions of state law. Further, we recognize the importance of allowing the Kansas Supreme Court to decide questions of state law and policy, and thus define state law. More specifically, the question of how to interpret a standard pollution exclusion clause is a matter of exceptional importance for state insurers and insureds.
Although the interpretation of a pollution exclusion clause has been considered by two Kansas Court of Appeals decisions, these decisions differ from earlier interpretations of Kansas law by two federal district courts. We recognize that the answer to a certified question “must be based on Kansas precedent rather than federal rulings interpreting Kansas law.” Am. Family Mut., 179 P.3d at 1109. The Kansas decisions appear, however, to be fact-specific and based on the specific nature of the presented circumstances. See Crescent Oil Co., 888 P.2d at 871-73 (holding that gasoline is not a pollutant when stored in a storage tank, but is a pollutant once it escapes or leaks from the storage tank); Atl. Ave. Assocs., 24 P.3d at 191-92 (holding that liquid cement cleaner is a pollutant when it leaks out of a drum). In light of the nationwide split of authority interpreting this standard pollution exclusion clause, and the conflicting rulings under Kansas law on the central question of whether its definition of a ‘pollutant’ is ambiguous, we conclude that, in the absence of controlling authority from the Kansas Supreme Court, the answer to that question, and to the more specific question of whether Kansas would interpret the term ‘pollutant’ to exclude coverage of anhydrous ammonia used as a fertilizer in a farm owner’s insurance policy, are sufficiently unsettled and dispositive that certification is warranted.
We therefore CERTIFY these questions of Kansas state law to the Kansas Supreme Court. We greatly appreciate the consideration of this request.
The clerk of this court shall submit to the Kansas Supreme Court a certified copy of this order, together with copies of the briefs filed in this court, and copies of the District Court's Memorandum and Order. The clerk of this court shall also transmit a copy of this certification order to counsel for all parties to these proceedings in this court, and to the Clerk of the United States District Court for the District of Kansas, attention case no. 08-CV-1096-MLB. Costs of certification shall be paid as provided by Kan. Stat. Ann. § 60-3205. If the Kansas Supreme Court agrees to accept the certified questions, any further proceedings shall be governed by the appellate rules and statutes governing litigants before that court. Kan. Stat. Ann. § 60-3206.
This appeal is ABATED pending resolution of the questions certified herein.