**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 13, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNION INSURANCE COMPANY,

      Plaintiff-Counter-
      Defendant-Appellee,

v.

KARLA MENDOZA,

      Defendant-Counter-
      Claimant-Appellant.

_____

COMPLEX INSURANCE CLAIMS
LITIGATION ASSOCIATION,

      Amicus Curiae.

No. 09-3159
(D.C. No. 6:08-CV-01096-MLB)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Karla Mendoza appeals the district court's grant of summary judgment in favor of Union Insurance Company (Union), in which it ruled that the accidental disbursement of anhydrous ammonia was excluded from coverage by Union's pollution exclusion clause. We have jurisdiction over this diversity case under 28 U.S.C. § 1291, and we affirm.

BACKGROUND

*A. Denial of Coverage*. The facts are uncontroverted. In July 2006, Ms. Mendoza was injured by a spray of anhydrous ammonia fertilizer released on farm land in Kansas owned by Irsik G&B Farms, Inc. (Irsik Farms). Union provided a Farm owners-Ranch owners insurance policy to Irsik Farms from September 2005 to September 2006. Ms. Mendoza filed a personal injury lawsuit against Irsik Farms and its employee, Bradley Irsik, alleging that they caused her bodily injury by exposing her to a mist of anhydrous ammonia fertilizer on July 14, 2006. Anhydrous ammonia fertilizer places nitrogen into the soil, and is commonly used as a fertilizer. Relying on a pollution exclusion provision in its insurance policy, Union denied coverage for the Mendoza lawsuit. Ms. Mendoza obtained a consent judgment from Irsik Farms for one million dollars, in exchange for a covenant not to execute upon the judgment against them. Union filed an action in the United States District Court for the District of Kansas seeking a declaratory judgment that the liability policy did not cover the

Mendoza judgment. Irsik Farms was voluntarily dismissed from the declaratory action.

B. *Underlying Claim.* On the day Ms. Mendoza was injured, an Irsik Farm's employee was applying anhydrous ammonia fertilizer on an Irsik Farm's field next to where Ms. Mendoza was working on road construction. The employee asked Bradley Irsik for help because the fertilizer was not coming out evenly. The fertilizer was stored in a tank on the back of a tractor; it was applied to the soil by flowing through piping from the tank to several holes on shanks on the tractor's plow and then into the soil. Bradley Irsik raised the plow out of the soil to see if the lines were plugged, and looked at the plow to see if vapors were coming out of the tubes. He then held the hydraulic switch down for about three seconds, releasing the anhydrous ammonia into the air. At the time, Ms. Mendoza was loading a road sign on the nearby road when a mist of the anhydrous ammonia fertilizer engulfed her. She testified that she could not breathe; her eyes, lungs and throat were burning; and she required medical attention.

C. *Policy Language.* Union's policy of insurance to Irsik Farms includes coverage for personal injury liability. The personal liability coverage contains an exclusion, however, for personal injury caused by a pollutant. In an endorsement entitled "Farmer's Comprehensive Personal Liability Insurance," the liability coverage states:

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an "**occurrence**" to which this coverage applies, we will:

> a.   pay up to our limit of liability for the damages for which the
> "**Insured**" is legally liable; and
>
> b.   provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit
> that we decide is appropriate.  Our obligation to defend any
> claim or suit ends when the amount we pay for damages resulting from the "**occurrence**" equals our limit of liability.

Aplt. App., Vol. I, at 68.

The "Exclusions" clause in the Personal Liability endorsement states in relevant part:

> Personal Liability and . . . Medical Payments to Others do not apply to bodily injury or property damage:
>
> * * * *
> j.   (1)   arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
>
> > (a)   at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to you, or any "**Insured**".
>
> * * * *
> > (d)   at or from any premises, site or location on which you, or any "**Insured**" or any contractors or subcontractors working directly or indirectly on your's or any "**Insured's**" behalf are performing operations:

(i)   If the pollutants are brought on or to the premises, site or location in connection with such operations by you, or any "**Insured**". . . .

\* \* \* \*
     (2)

\* \* \* \*

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(*This exclusion does not apply to property damage caused by accidental drift of vapors, fumes, or toxic chemicals as a result of spraying operations.*)

*Id*. at 69-71.

*D.  District Court Ruling*.  The district court granted Union's motion for summary judgment, ruling Irsik Farm's accidental disbursement of anhydrous ammonia was excluded from coverage by the pollution exclusion.  It ruled that the language of the pollution exclusion clause and its definition of a pollutant are not ambiguous, and that anhydrous ammonia, while useful as a fertilizer in farming operation, is a pollutant.  Aplt. App., Vol. II, at 345, 347.  It concluded that "a pollutant under the insurance policy is any irritating or contaminating substance, which may be a solid, liquid, gaseous or thermal substance."  Aplt. App., Vol. II, at 342.  Citing to dictionary definitions, it concluded that an "irritant is a source of irritation, especially physical irritation," and that

-5-

"[t]o contaminate means to make impure or unclean by contact or mixture." *Id*. at 342-43 (internal quotations omitted). Ms. Mendoza now appeals that ruling.

ANALYSIS

Ms. Mendoza contends that the anhydrous ammonia was being used, as it commonly is, as a fertilizer, and that under these circumstances, it is not a pollutant. She contends that the definition of a pollutant in the pollution exclusion clause is so overly-broad as to be ambiguous because any substance could conceivably meet the definition of a pollutant under the exclusion. She notes that the definition of a pollutant does not define the terms irritant or contaminant and read literally, these terms are virtually boundless, because there is no substance or chemical in existence that does not irritate or contaminate some person or property. She contends the terms "irritant" and "contaminant," do not have a plain, ordinary meaning. She further argues that, particularly in a farm owner's insurance policy, a reasonably prudent insured farmer would not understand the exclusion clause's definition of a pollutant to cover a commonly used farm fertilizer. Thus, she argues that coverage exists because the exclusion must be interpreted narrowly and in a light most favorable to the insured.

In response, Union contends that anhydrous ammonia is a pollutant under the terms of its pollution exclusion clause, and thus is excluded from coverage. Union presented evidence that anhydrous ammonia has known hazardous effects, including respiratory tract, skin and eye burns, and contains one or more

components listed as a hazardous air pollutant under the Clean Air Act. It asserts

that Ms. Mendoza's injuries of burning in her eyes, throat, lungs and skin further

establish that anhydrous ammonia fertilizer is an irritant. Thus, Union argues the

anhydrous ammonia is clearly an irritant and contaminant and, thus, falls within

the policy's definition of a pollutant.

Our duty in a diversity case is to "apply state law in accordance with the

then controlling decision of the highest state court." *Juarez v. United Farm

Tools, Inc.*, 798 F.2d 1341, 1342 (10th Cir.1986) (internal quotation marks and

alteration omitted). Under Kansas law, an insurer bears the burden of proving

that coverage is excluded. *Shelter Mut. Ins. Co. v. Williams ex rel. Williams*,

804 P.2d 1374, 1383 (Kan. 1991). When interpreting insurance contracts, and

exclusion clauses in particular, Kansas applies the following rules of

construction:

> Because the insurer prepares its own contracts, it has a duty to
> make the meaning clear. If the insurer intends to restrict or limit
> coverage under the policy, it must use clear and unambiguous
> language; otherwise, the policy will be liberally construed in favor of
> the insured. If an insurance policy's language is clear and
> unambiguous, it must be taken in its plain, ordinary, and popular
> sense. In such case, there is no need for judicial interpretation or the
> application of rules of liberal construction. The court shall not make
> another contract for the parties and must enforce the contract as
> made.
>
> However, where the terms of an insurance policy are
> ambiguous or uncertain, conflicting, or susceptible of more than one
> construction, the construction most favorable to the insured must
> prevail.

> To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. Whether a written instrument is ambiguous is a question of law to be decided by the courts. Courts should not strain to create an ambiguity where, in common sense, there is not one. The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean.

*Am. Family Mut. Ins. Co. v. Wilkens*, 179 P.3d 1104, 1109-10 (Kan. 2008) (internal quotation marks and bracketed material omitted).

Different courts interpreting this same definition of a pollutant in liability exclusion clauses have reached different conclusions as to the term's meaning and as to whether the term is ambiguous under Kansas law. *Compare Regent Ins. Co. v. Holmes*, 835 F. Supp. 579, 581-82 (D. Kan. 1993) (holding that the definition of pollutants in this exclusion clause was ambiguous because it did not define the terms irritant or contaminant), *and Westchester Fire Ins. Co. v. City of Pittsburg*, 794 F. Supp. 353, 355 (D. Kan. 1992) (holding that this pollution exclusion clause was so broad and imprecise as to be ambiguous), *with Atl. Ave. Assocs. v. Cent. Solutions, Inc.*, 24 P.3d 188, 191-92 (Kan. Ct. App. 2001) (holding that an identical exclusion clause was not ambiguous), *and Crescent Oil Co. v. Federated Mut. Ins. Co.*, 888 P.2d 869, 871-73 (Kan. Ct. App. 1995) (holding that no ambiguity arose from the pollution exclusion clause language itself).

Based on these conflicting decisions, we requested the Kansas Supreme Court to exercise its discretion to accept the certified question of whether the definition of a pollutant in a standard pollution exclusion clause in a liability insurance contract is ambiguous under Kansas law. We recognized that the Kansas Court of Appeals had twice held the term to be unambiguous, in *Atlantic Avenue* and *Crescent Oil*, but we noted that those decisions could be interpreted as being limited to the presented facts. *See also Grynberg v. Total, S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008) (noting that "we are not bound by decisions of state intermediate appellate courts when we apply state law in a diversity case.").

The Kansas Supreme Court initially accepted certification. It subsequently dismissed the case, however, stating that, in light of a recent Kansas federal district court decision, *Gerdes v. American Family Mutual Insurance Co.*, 713 F. Supp. 2d 1290 (D. Kan. 2010), it would be improper to accept certification because there is controlling Kansas precedent. The dismissal order stated that *Gerdes* "acknowledged the precedential value of *Crescent Oil* [ ] and *Atlantic Avenue* [ ] beyond the facts of those cases," and thus, these decisions represented the state's controlling precedent. Order to Dismiss, *Union Ins. Co. v. Mendoza*, No. 104,087 (Kan. Oct. 8, 2010) (unpublished order).

In *Gerdes*, the district court held that under Kansas law, as articulated in *Atlantic Avenue* and *Crescent Oil*, the definition of a pollutant in a pollution exclusion clause as "any solid, liquid, gaseous or thermal irritant or contaminant,

-9-

including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste" is not so overly broad as to be ambiguous and is not subject to conflicting interpretations. 713 F. Supp. 2d at 1300-01. In *Crescent Oil*, gasoline leaked from an underground storage tank at a gasoline station. The insured's policy had a pollution exclusion clause with the same definition of pollutants as in Irsik Farm's policy with Union. The Kansas court in *Crescent Oil* recognized that "[c]ases in some jurisdictions may have limited the scope of the definition of pollutant under the exclusion in a number of ways," but that it was not constrained to do so. 888 P.2d at 872-73. It declined to hold that the pollution exclusion applied only to active industrial pollution, as the insured had contended, and ruled that the policy definition of pollutants did not permit "multiple conflicting interpretations." *Id*. at 873. The Kansas Court of Appeals in *Atlantic Avenue* followed *Crescent Oil*, holding that the exclusion clause was not so overly broad as to render the entire exclusion ambiguous, 24 P.3d at 191, and that liquid cement cleaner is a pollutant when it leaks out of a drum, causing damage. *Id.* at 191-92.

Based on *Gerdes*, and the Kansas Supreme Court's characterization of *Gerdes* in its order of dismissal, we conclude that the district court correctly held that, under Kansas law, the definition of a pollutant as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids,

alkalis, chemicals and waste" is not ambiguous, and must, therefore, be enforced according to its terms.

By its terms, the pollution exclusion clause here includes "any irritating or contaminating substance, which may be a solid, liquid, gaseous or thermal substance." Aplt. App., Vol. I, at 71. Union presented undisputed evidence that anhydrous ammonia is an irritant. As noted by the district court, the Material Safety Data Sheet for the anhydrous ammonia used by Irsik Farms stated that exposure to the anhydrous ammonia was a major health hazard that could cause respiratory tract burns, skin burns and eye burns, as well as nausea, vomiting and nerve damage, and contains one or more components listed as a hazardous air pollutant under the Clean Air Act. *See* Aplee. Br., Attach. 1, at 1-2, 7; Aplt. App., Vol. II, at 345-46 (Memorandum and Order). Accordingly, we conclude the district court correctly ruled that the release of anhydrous ammonia is a pollutant under the pollution exclusion clause in Irsik Farm's liability insurance policy with Union, and, therefore, that Union is not liable for bodily injuries arising out of Ms. Mendoza's exposure to it.

Accordingly, we AFFIRM the district court's order granting summary

judgment in favor of Union.

Entered for the Court


Monroe G. McKay
Circuit Judge